**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ERIK SHANUR,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:26-CV-00316** |
| | § | |
| **FEDERAL EXPRESS CORPORATION,** | § | |
| **Defendant.** | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Erik Shanur, hereinafter called Plaintiff, complaining of and about Federal Express Corporation, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.  Plaintiff is a resident of Tarrant County, Texas. Defendant Federal Express Corporation ("FedEx") is a corporation doing business in Texas. Defendant Federal Express Corporation may be served by serving CT Corp System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 or wherever it may be found. *Issuance of a summons is hereby requested.*

### JURISDICTION & VENUE

2.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 because Plaintiff asserts claims arising under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA).

3.  Venue is proper in this district under 28 U.S.C. §1391(b) because the unlawful employment practices described herein occurred in Tarrant County, Texas, which lies within the

Northern District of Texas.

## NATURE OF ACTION

4.      This is an employment discrimination action brought under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and Chapter 21 of the Texas Labor Code. These statutes prohibit employers from discriminating against employees based on race, sex, and age, and prohibit retaliation against employees who oppose unlawful discrimination.

## CONDITIONS PRECEDENT

5.      All conditions precedent to jurisdiction have occurred or been complied with as a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein, and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## STATEMENT OF FACTS

6.      Plaintiff Erik Shanur began his employment with Defendant Federal Express Corporation ("FedEx") on or about August 13, 2018, when he was hired as a handler at FedEx's Fort Worth, Texas facility.

7.      Prior to hiring Plaintiff, Defendant conducted a background screening process consistent with its hiring policies and procedures. At the time of his hiring, Defendant was aware of Plaintiff's background, including information that Plaintiff had previously been required to register as a sex offender under Texas law.

8.      Despite possessing this information, Defendant hired Plaintiff and permitted him to work in positions that required trust and responsibility within its operations.

9.      During his tenure with Defendant, Plaintiff performed his duties satisfactorily and

was repeatedly entrusted with increased responsibilities.

10.     Shortly after his hiring, Defendant promoted Plaintiff to the position of material handler on or about September 30, 2018.

11.     Plaintiff continued to perform his job duties successfully and, on or about April 18, 2021, was promoted to the position of team leader.

12.     Plaintiff remained in that position for several years without any disciplinary action that would warrant termination.

13.     On or about March 31, 2024, Defendant transferred Plaintiff to the position of international import cage agent.

14.     In this role, Plaintiff was responsible for maintaining custodial control of international shipments and ensuring that shipments were properly handled and secured pending clearance.

15.     Plaintiff's transfer to this position reflected Defendant's continued trust in Plaintiff's ability to perform sensitive operational duties.

16.     Prior to the events giving rise to this lawsuit, Plaintiff had worked for Defendant for nearly six years and had received promotions during his employment.

17.     In early 2024, tensions began to arise within Plaintiff's workplace environment, including increased scrutiny of Plaintiff's conduct and workplace interactions.

18.     On or about May 2, 2024, Defendant initiated an internal investigation following an anonymous report concerning an alleged interaction between Plaintiff and a coworker.

19.     The report alleged that Plaintiff had touched a coworker's shoulder while speaking with her at work.

20.     During the course of this investigation, Defendant questioned Plaintiff about the

alleged incident.

21.    Plaintiff cooperated fully with Defendant's investigation and answered all questions posed by management and security personnel.

22.    The investigation did not result in any substantiated finding of misconduct by Plaintiff.

23.    Despite the lack of substantiated misconduct, Defendant continued to subject Plaintiff to heightened scrutiny and investigation.

24.    During the investigation process, Defendant revisited information concerning Plaintiff's past criminal history, including his prior status as a registered sex offender.

25.    This information had been known to Defendant at the time Plaintiff was hired and had not previously been treated as a disqualifying factor for employment.

26.    Defendant had permitted Plaintiff to work for years after his hiring, including promoting him to supervisory and leadership positions.

27.    Defendant had also allowed Plaintiff to transfer into a position involving custodial control of international shipments only weeks before his termination.

28.    Nevertheless, Defendant suddenly asserted that Plaintiff's prior status as a registered sex offender rendered him unsuitable for continued employment.

29.    Defendant referred Plaintiff's status to an internal Security Continuous Monitoring ("SCM") committee for review.

30.    Upon information and belief, the SCM committee relied upon information that had long been known to Defendant when making its decision regarding Plaintiff's employment.

31.    Defendant's reliance on this previously known information was inconsistent with its prior hiring and promotion decisions regarding Plaintiff.

32.     Defendant ultimately terminated Plaintiff's employment on or about June 11, 2024.

33.     Defendant asserted that Plaintiff's termination was based on the discovery or disclosure of his prior status as a registered sex offender.

34.     This explanation was inconsistent with Defendant's own actions in hiring and promoting Plaintiff despite having knowledge of his background.

35.     Defendant's reliance on Plaintiff's criminal history years after hiring and promoting him is inconsistent with its prior employment decisions and suggests that the stated reason for termination was not the true reason but rather a justification developed after the decision to terminate had already been made.

36.     The timing of Defendant's termination decision further raises questions regarding the legitimacy of Defendant's stated reasons.

37.     Plaintiff had worked for Defendant for nearly six years, had received promotions, and had recently been transferred into a position of increased responsibility.

38.     The sudden reliance on information known at the time of hiring, combined with the escalation of scrutiny following the internal investigation, demonstrates that Defendant's stated reason for termination was pretextual.

39.     Defendant's conduct damaged Plaintiff's professional reputation and resulted in the loss of his employment and income.

40.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, lost employment opportunities, emotional distress, and other damages.

## SEX DISCRIMINATION (TITLE VII)

41.     Plaintiff incorporates all preceding paragraphs herein.

42.     Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to

discriminate against someone on the basis of race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion. The Act prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

43. To establish a prima facie case of discrimination, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 64). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

44. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent "to strike at the entire spectrum of disparate treatment of men and women" in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)); *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

45. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate

some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

46.    Defendant will likely contend that Plaintiff's termination was based on a legitimate, nondiscriminatory reason—namely Plaintiff's status as a registered sex offender. However, the record demonstrates that this justification is pretextual.

47.    First, Defendant knowingly hired Plaintiff with full awareness of his background. Plaintiff disclosed his criminal history during the hiring process, and Defendant conducted background checks consistent with its own policies. Despite this knowledge, Defendant hired Plaintiff in 2018 and allowed him to continue working for years without termination. During that time, Plaintiff was promoted multiple times, including to the position of team leader and later to international import cage agent. Defendant's decision to employ and promote Plaintiff despite his background directly contradicts its later claim that the same background rendered him unsuitable for employment.

48.    Second, the timing of Plaintiff's termination demonstrates pretext. Plaintiff was terminated only after a workplace investigation was initiated following a complaint by a female coworker. That investigation did not substantiate misconduct. Rather than disciplining Plaintiff for the alleged conduct—which was not proven—Defendant shifted its explanation and relied on Plaintiff's criminal history as the basis for termination. The sudden reliance on information that had existed for years strongly suggests that Defendant's explanation is not the true reason for Plaintiff's discharge.

49.    Third, Defendant's shifting explanations for termination further demonstrate

pretext. Defendant initially investigated Plaintiff based on an allegation of inappropriate physical contact. When that allegation was not substantiated, Defendant abandoned that rationale and instead relied on Plaintiff's registry status to justify termination. Courts consistently recognize that shifting justifications for an adverse employment decision are powerful evidence of pretext.

50.    Fourth, Defendant's actions departed from its own employment practices. Defendant maintained internal policies governing employee discipline and investigations. Yet in Plaintiff's case, Defendant failed to conduct a fair and balanced investigation, failed to credit Plaintiff's explanation, and instead relied heavily on subjective complaints made by female coworkers. Such deviations from normal procedures support a finding that the proffered explanation is not the true reason for termination.

51.    Finally, Defendant's justification is undermined by its own conduct. If Plaintiff's background truly rendered him unfit for employment, Defendant would not have hired him in the first place or promoted him multiple times over several years. The fact that Defendant suddenly deemed Plaintiff unsuitable only after workplace accusations were raised strongly supports the conclusion that Defendant's stated reason for termination is a pretext for discrimination.

52.    Under the McDonnell Douglas framework, these facts demonstrate that Defendant's stated justification is not worthy of credence and that the true motivation behind Plaintiff's termination was unlawful discrimination.

53.    The combination of Defendant's prior knowledge of Plaintiff's background, the timing of Plaintiff's termination following an unsubstantiated workplace complaint, and Defendant's shifting explanations for its decision create a strong inference that Plaintiff's termination was not based on legitimate business reasons but was instead motivated by unlawful discrimination.

54.     Plaintiff is a male and therefore a member of a protected class under Title VII. Title VII protects individuals from discrimination based on sex, including discrimination against men. Plaintiff was qualified for his position at FedEx, as demonstrated by his successful hiring, multiple promotions, and continued employment for several years without termination or serious discipline.

55.     Plaintiff experienced an adverse employment action when Defendant terminated his employment on June 11, 2024. Prior to his termination, Plaintiff had performed his job duties successfully and had advanced within the company from handler to team leader and later to international import cage agent.

56.     The circumstances surrounding Plaintiff's termination give rise to an inference of sex discrimination. Plaintiff was subjected to allegations from female coworkers that were either exaggerated or unsubstantiated, yet Defendant accepted those allegations at face value without conducting a fair and impartial investigation. Defendant relied heavily on the subjective complaints of female employees while disregarding Plaintiff's explanations and the lack of corroborating evidence supporting the allegations.

57.     The investigation that ultimately led to Plaintiff's termination arose from a complaint by a female coworker alleging that Plaintiff touched her shoulder. The investigation did not substantiate misconduct. Nevertheless, Defendant used the investigation as an opportunity to justify terminating Plaintiff's employment.

58.     Rather than addressing the alleged conduct itself, Defendant shifted its justification for termination to Plaintiff's criminal history—specifically his status as a registered sex offender. However, Defendant had already hired Plaintiff with knowledge of his background and had promoted him multiple times during his employment. The sudden reliance on this previously known information demonstrates that Defendant's explanation was not the true reason for

Plaintiff's termination.

59.    Defendant's treatment of Plaintiff reflects disparate enforcement of workplace policies and a willingness to credit allegations made by female employees while disregarding evidence favorable to Plaintiff. The reliance on subjective complaints from female coworkers and the failure to conduct a balanced investigation created a discriminatory process that disproportionately disadvantaged Plaintiff because he is male.

60.    Other employees outside Plaintiff's protected class, including female employees involved in workplace disputes, were treated more favorably. Complaints made by female employees were credited without scrutiny, while Plaintiff's responses and explanations were ignored.

61.    Similarly situated female employees who were the subject of workplace complaints were not subjected to comparable disciplinary escalation or termination.

62.    Defendant's decision-making process was influenced by gender-based assumptions that Plaintiff, as a male employee, posed a potential threat to female coworkers. These assumptions were used to justify heightened scrutiny of Plaintiff and ultimately contributed to the decision to terminate him.

63.    Defendant's decision-making process reflected gender-based assumptions that male employees accused of misconduct toward female coworkers were inherently less credible, resulting in a biased investigation that disproportionately disadvantaged Plaintiff.

64.    The circumstances surrounding the investigation and termination—including the reliance on subjective complaints by female employees, the lack of a meaningful investigation, and Defendant's shifting explanations for termination—create a strong inference that Plaintiff was treated differently because of his sex.

65.     Under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, Plaintiff can establish a prima facie case of sex discrimination. Defendant may attempt to articulate a legitimate nondiscriminatory reason for terminating Plaintiff; however, Plaintiff will demonstrate that any such explanation is pretextual.

66.     Defendant's conduct, including its reliance on unsubstantiated complaints, selective enforcement of workplace policies, and shifting justifications for termination, demonstrates that Plaintiff's sex was a motivating factor in the decision to terminate his employment.

67.     Defendant's actions constitute unlawful discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964.

## RACE AND COLOR DISCRIMINATION (TITLE VII)

68.     Plaintiff incorporates all preceding paragraphs herein.

69.     Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to discriminate against someone on the basis of race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion. The Act prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

70.     To establish a prima facie case of discrimination, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he phrase 'terms,

conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 64). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

71.     The phrase "terms, conditions, or privileges of employment" evinces a congressional intent "to strike at the entire spectrum of disparate treatment of men and women" in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)); *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

72.     The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

73.     Plaintiff is white and therefore a member of a protected class under Title VII. Title VII prohibits discrimination against any individual because of race or color, including discrimination against white employees. Plaintiff was qualified for his position at FedEx, as demonstrated by his hiring, multiple promotions, and continued employment with the company for several years prior to the events described herein.

74.     Plaintiff suffered an adverse employment action when Defendant terminated his employment on June 11, 2024. Prior to his termination, Plaintiff had advanced within the company from handler to team leader and later to international import cage agent. Plaintiff had been entrusted with increasing levels of responsibility, which demonstrates that Defendant considered him qualified for his position.

75.     The circumstances surrounding Plaintiff's termination give rise to an inference of race and color discrimination. Plaintiff was subjected to allegations and complaints that Defendant accepted without meaningful investigation while disregarding Plaintiff's explanations and the absence of corroborating evidence.

76.     Defendant's investigation was triggered by an allegation made by a coworker that Plaintiff touched her shoulder. The investigation did not substantiate misconduct by Plaintiff. Nevertheless, Defendant treated the allegation as credible and escalated the matter toward termination.

77.     Instead of addressing the alleged conduct—which was not proven—Defendant shifted its justification and relied on Plaintiff's criminal history as the basis for termination. Defendant's reliance on Plaintiff's background demonstrates pretext rather than a legitimate nondiscriminatory reason for termination.

78.     Defendant had been aware of Plaintiff's criminal history for years. Plaintiff disclosed his background during the hiring process, and Defendant conducted background checks consistent with its policies. Despite this knowledge, Defendant hired Plaintiff in 2018 and promoted him multiple times thereafter. The sudden reliance on information that Defendant had known for years strongly suggests that Defendant's explanation for Plaintiff's termination was not the true reason for the decision.

79.    Defendant's conduct also reflects disparate treatment. Plaintiff was subjected to heightened scrutiny, allegations, and disciplinary action that were not imposed on similarly situated employees. Defendant relied on subjective complaints and accusations against Plaintiff while failing to conduct a balanced investigation or credit Plaintiff's responses.

80.    Courts recognize that reliance on subjective complaints, combined with a failure to conduct a meaningful investigation and the presence of shifting explanations for termination, supports an inference of discriminatory intent.

81.    Additional circumstances surrounding Plaintiff's termination support an inference of discrimination, including: a. Defendant's immediate acceptance of allegations against Plaintiff without corroboration; b. Defendant's failure to conduct a fair and balanced investigation; c. Defendant's reliance on shifting explanations for termination; and d. Defendant's sudden reliance on background information that had existed for years.

82.    Defendant's decision-making process relied heavily on the credibility of minority coworkers while disregarding Plaintiff's explanations and the absence of corroborating evidence.

83.    These circumstances constitute "background circumstances" suggesting that Defendant discriminated against Plaintiff because of his race and color.

84.    Under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, Plaintiff can establish a prima facie case of race and color discrimination. Defendant may attempt to articulate a legitimate nondiscriminatory reason for terminating Plaintiff; however, Plaintiff will demonstrate that any such explanation is pretextual.

85.    Defendant's proffered reason for termination—Plaintiff's criminal history—is contradicted by Defendant's own actions in hiring and promoting Plaintiff despite that background.

The sudden reliance on that information only after workplace accusations were raised demonstrates that Defendant's explanation is not worthy of credence.

86.     Defendant's shifting explanations for termination, its reliance on unsubstantiated allegations, and its departure from normal employment practices demonstrate that Plaintiff's race and color were motivating factors in the decision to terminate his employment.

87.     Defendant's conduct constitutes unlawful discrimination based on race and color in violation of Title VII of the Civil Rights Act of 1964.

## AGE DISCRIMINATION (ADEA)

88.     Plaintiff incorporates all preceding paragraphs herein.

89.     The Age Discrimination in Employment Act of 1967, 81 Stat. 602, states: "it shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of age."

90.     Plaintiff was over the age of forty at all times relevant to this lawsuit and therefore is a member of the protected class under the Age Discrimination in Employment Act ("ADEA").

91.     At the time of his termination, Plaintiff was over the age of forty and significantly older than many of the coworkers who initiated complaints against him.

92.     Plaintiff was qualified for his position at FedEx, as demonstrated by his hiring in 2018, his years of continued employment with the company, and his advancement within the

organization to positions of increased responsibility, including team leader and later international import cage agent.

93.     Plaintiff suffered an adverse employment action when Defendant terminated his employment on June 11, 2024.

94.     The circumstances surrounding Plaintiff's termination give rise to an inference of age discrimination. Plaintiff was subjected to accusations and complaints that Defendant accepted without conducting a fair and meaningful investigation while disregarding Plaintiff's explanations and the absence of corroborating evidence supporting the allegations.

95.     The investigation that ultimately led to Plaintiff's termination arose from a complaint by a coworker alleging that Plaintiff touched her shoulder. The investigation did not substantiate misconduct. Nevertheless, Defendant escalated the matter and ultimately terminated Plaintiff.

96.     Instead of disciplining Plaintiff for the alleged conduct—which was not proven—Defendant shifted its explanation and relied on Plaintiff's criminal history as the basis for termination. Defendant had known about Plaintiff's background for years and had nevertheless hired and promoted Plaintiff despite that information.

97.     Defendant's sudden reliance on information that had existed for years demonstrates that Defendant's explanation for Plaintiff's termination was not the true reason for the decision and instead was a pretext for unlawful discrimination.

98.     Plaintiff was subjected to heightened scrutiny and disciplinary action that were not imposed on younger employees. Defendant relied on subjective complaints and unsupported allegations against Plaintiff while failing to conduct a balanced investigation or credit Plaintiff's responses.

99.    Defendant's reliance on shifting explanations, its failure to conduct a meaningful investigation, and its sudden reliance on information known at the time of hiring demonstrate that Defendant's stated justification for Plaintiff's termination is not worthy of credence.

100.    Courts recognize that such shifting explanations and departures from normal employment practices are strong evidence that an employer's proffered reason for termination is pretextual.

101.    Under the burden-shifting framework applicable to age discrimination claims, Plaintiff can establish a prima facie case of age discrimination. Defendant may attempt to articulate a legitimate nondiscriminatory reason for its decision; however, Plaintiff will demonstrate that any such explanation is pretextual.

102.    Defendant's conduct—including its reliance on unsubstantiated allegations, its shifting explanations for termination, and its sudden reliance on information that had been known for years—demonstrates that Defendant's stated reason for terminating Plaintiff is false.

103.    Plaintiff would not have been terminated but for his age, and Defendant's actions therefore constitute unlawful age discrimination in violation of the Age Discrimination in Employment Act.

104.    The combination of Defendant's reliance on unsubstantiated allegations, its shifting explanations for termination, and its reliance on information known at the time of hiring creates a strong inference that Defendant's decision was not based on legitimate business reasons but instead was motivated by unlawful discrimination.

### RETALIATION – RACE & COLOR & SEX (TITLE VII)

105.    Plaintiff incorporates all preceding paragraphs.

106.    Title VII of the Civil Rights Act of 1964 (the "Act") prohibits retaliation against an employee who reports or opposes race or color discrimination. It is unlawful to retaliate against applicants or employees for communicating with a supervisor or manager about employment discrimination, including harassment. Retaliation can take the form of a reprimand; giving a performance evaluation that is lower than it should be; engaging in physical or verbal abuse; increased scrutiny; and making the employee's work more difficult.  A plaintiff establishes a claim for retaliation when [s]he, "engaged in an activity protected by Title VII; 2) was subjected to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting *Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

107.    Title VII states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 2000e-3(a).

108.    *McDonnell Douglas* provides the burden-shifting framework for claims of unlawful retaliation under Title VII. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1112 (5th Cir. 1998).  It says that "to show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by Title VII, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Nall v. BNSF Ry. Co.*, 917

F.3d 335, 348−49 (5th Cir. 2019) (quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)); *see also Credeur*, 860 F.3d at 797 (same). If "the plaintiff has established a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Nall*, 917 F.3d 335, 349 (5th Cir. 2019) (quoting Seaman, 179 F.3d at 301). If the defendant does so, "the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*.

109.    In early 2024, shortly before the investigation leading to his termination, Plaintiff communicated concerns to supervisors regarding discriminatory workplace treatment and conduct directed toward him.

110.    Plaintiff engaged in activity protected by Title VII when he communicated concerns to supervisors and management regarding discriminatory treatment and workplace conduct directed toward him. Plaintiff opposed what he reasonably believed to be unlawful discrimination based on race, color, and sex.

111.    Plaintiff's complaints to management constituted protected activity under Title VII because employees are protected when they report or oppose conduct that they reasonably believe to be discriminatory or unlawful.

112.    After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to increased scrutiny and heightened disciplinary attention in the workplace.

113.    Defendant began to treat workplace complaints against Plaintiff differently from complaints made against other employees. Allegations made against Plaintiff were immediately credited and escalated without meaningful investigation, while Plaintiff's explanations and defenses were disregarded.

114.    Plaintiff was subjected to an internal investigation after a coworker alleged that Plaintiff touched her shoulder. Plaintiff denied the allegation and cooperated with Defendant's investigation.

115.    The investigation did not substantiate misconduct by Plaintiff.

116.    Despite the absence of substantiated wrongdoing, Defendant escalated the situation and began reviewing Plaintiff's background and employment eligibility.

117.    Defendant ultimately terminated Plaintiff's employment on June 11, 2024.

118.    Plaintiff's termination constitutes an adverse employment action under Title VII.

119.    A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions.

120.    The timing of Defendant's actions demonstrates a clear retaliatory motive. Defendant increased scrutiny of Plaintiff after he raised concerns regarding workplace conduct and discrimination.

121.    These accusations and complaints were repeated and widely discussed within Plaintiff's workgroup, damaging Plaintiff's reputation and creating an environment of suspicion and hostility toward him.

122.    Defendant relied on subjective complaints and unsupported allegations to justify investigating and disciplining Plaintiff.

123.    Defendant's decision to terminate Plaintiff occurred shortly after Plaintiff engaged in protected activity and after the unsubstantiated workplace complaint was raised.

124.    Defendant's proffered reason for termination—Plaintiff's criminal history—is pretextual.

125.    Defendant had been aware of Plaintiff's criminal history since the time of hiring and nevertheless hired Plaintiff and promoted him multiple times during his employment.

126.    Defendant only relied on Plaintiff's background after workplace accusations were made and after Plaintiff engaged in protected activity.

127.    The sudden reliance on information known for years demonstrates that Defendant's stated reason for termination was not the true reason for its decision.

128.    Courts recognize that shifting explanations for an adverse employment decision and reliance on previously known information are strong indicators of retaliatory motive.

129.    Defendant's conduct—including increased scrutiny, reliance on unsubstantiated allegations, and termination following Plaintiff's protected activity—demonstrates that Defendant's actions were motivated by retaliation.

130.    But for Plaintiff's protected activity opposing discrimination, Defendant would not have subjected Plaintiff to heightened scrutiny, escalated workplace complaints against him, or terminated his employment.

131.    The combination of Defendant's increased scrutiny of Plaintiff, its reliance on unsubstantiated allegations, and its sudden reliance on information known at the time of hiring creates a strong inference that Defendant's actions were motivated by retaliation rather than legitimate business reasons.

132.    Defendant's actions constitute unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

## HOSTILE WORK ENVIRONMENT (TCHRA)

133.    Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

134.   Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

"An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

135.   A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

136.   To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

137.   During the course of his employment, Plaintiff was subjected to a workplace environment characterized by repeated accusations, scrutiny, and hostility from coworkers and supervisors.

138.   Plaintiff was repeatedly subjected to rumors, complaints, and accusations that were promoted and escalated by coworkers despite the absence of corroborating evidence.

139.    These accusations and rumors circulated repeatedly within the workplace over an extended period of time, damaging Plaintiff's professional reputation and undermining his ability to perform his job duties.

140.    Defendant failed to conduct fair and balanced investigations into these accusations and instead credited the allegations made against Plaintiff while disregarding Plaintiff's explanations and the lack of supporting evidence.

141.    Defendant's management permitted these accusations and complaints to persist and escalate, which created a workplace environment in which Plaintiff was continually subjected to suspicion, scrutiny, and hostility.

142.    Plaintiff was forced to work in an environment where coworkers openly made complaints and accusations against him that were accepted without verification.

143.    Defendant's failure to intervene or address these accusations allowed the hostile environment to continue and worsen over time.

144.    The hostile work environment ultimately culminated in an investigation initiated after a coworker accused Plaintiff of touching her shoulder.

145.    Plaintiff denied the allegation and cooperated fully with Defendant's investigation.

146.    The investigation did not substantiate misconduct by Plaintiff.

147.    Despite the lack of substantiated wrongdoing, Defendant escalated the matter and ultimately terminated Plaintiff's employment.

148.    Defendant's reliance on unsubstantiated accusations and its failure to conduct fair investigations contributed to a work environment that was intimidating, hostile, and abusive to Plaintiff.

149.     Defendant's conduct, including repeated scrutiny of Plaintiff, acceptance of unsupported allegations, and failure to address the ongoing hostility directed toward Plaintiff, altered the terms and conditions of Plaintiff's employment.

150.     The conduct described above was sufficiently severe and pervasive to interfere with Plaintiff's ability to perform his job and created an abusive working environment.

151.     Defendant knew or should have known of the hostile conduct directed toward Plaintiff but failed to take prompt or effective remedial action.

152.     Defendant's actions and omissions permitted the hostile work environment to persist and ultimately culminated in Plaintiff's termination.

153.     The hostility directed toward Plaintiff was not limited to isolated incidents but instead reflected an ongoing pattern of accusations, scrutiny, and suspicion that Defendant permitted to continue throughout Plaintiff's employment. Defendant's repeated acceptance of unsupported allegations and its failure to conduct fair investigations created a workplace environment in which Plaintiff was continually subjected to hostility and reputational harm.

154.     The hostile environment created by Defendant's actions and inaction was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment. Defendant's conduct subjected Plaintiff to constant scrutiny, damaged his professional standing within the workplace, and ultimately culminated in the termination of his employment.

155.     Defendant's conduct therefore constitutes unlawful discrimination and the creation of a hostile work environment in violation of the Texas Commission on Human Rights Act.

**RESPONDEAT SUPERIOR AND RATIFICATION**

156.     Whenever in this complaint it is alleged that the Defendant did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of

the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## DAMAGES

157.    Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

a.    Back pay from the date of Plaintiff's termination and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

b.    All reasonable and necessary costs incurred in pursuit of this suit;

c.    Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

d.    Inconvenience;

e.    Interest;

f.    Mental anguish in the past;

g.    Mental anguish in the future;

h.    Loss of benefits;

i.    Compensatory damages for emotional pain, suffering, inconvenience, mental anguish (past and future), and loss of enjoyment of life;

j.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

k.    Punitive damages as permitted under Title VII;

l.    Prejudgment and post judgment interest as allowed by law; and

m.    Any and all other relief to which Plaintiff may show himself justly entitled.

## SPECIFIC RELIEF

158.    Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

a.    Neutral job reference;

b.    An injunction against Defendant prohibiting discriminatory employment practices on the basis of race, color, and protected activity;

c.    An order requiring Defendant to implement training for all managerial personnel on race discrimination, retaliation, and employee rights under Title VII and Chapter 21 of the Texas Labor Code; and

d.    Such other and further equitable relief as the Court deems just and proper to fully redress the harm suffered by Plaintiff.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Erik Shanur respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.**

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell
State Bar No. 24098868
ali@cralawfirm.com

CROCKER RUSSELL & ASSOCIATES
200 W. Oak Street
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

**ATTORNEY FOR PLAINTIFF**